United Cigar Stores Company of America, Plaintiff, *v.* Louise M. Norwood, Individually and as Sole Executrix and Trustee, etc., and Others, Defendants.

Supreme Court, Kings Special Term, February 24, 1925.

Landlord and tenant — rent — amount of rental where city of New York acquires title to portion of premises by condemnation proceedings — provision in lease deemed to produce abatement of rent in same proportion as value of remainder of premises bears to whole of parcel prior to time title vested in city of New York.

Where a portion of leased premises has been taken by the city of New York in condemnation proceedings there should be an abatement of rent as to the tenant in the same proportion as the value of the remainder of the premises bears to the whole parcel prior to the time title vested in the city of New York, where the lease provides that in the event of a partial acquisition of the premises by condemnation proceedings " the rent, taxes and all payments required to be made by the tenant hereunder shall be adjusted and apportioned so that the tenant shall only be required to pay for the remainder of the term a ratable as to value and just proportion of the rent and taxes."

ACTION by the plaintiff, landlord, for a declaratory judgment which shall fix the amount of the rental to be paid from the date of vesting title in the city of New York by condemnation proceedings to the termination of the lease, and to recover excess rentals, if any, paid by the tenant subsequent to the date of the vesting of title.

*Strook & Strook* [*Charles Levy* of counsel], for the plaintiff.

*McLeer & Dobson,* for the defendants Louise M. Norwood and others.

*Solomon S. Leff* [*J. W. Bermant* of counsel], for the defendant Anderson Holding Corporation.

CALLAGHAN, J.:

On the 2d day of August, 1919, the plaintiff entered into a lease with the defendant Norwood and others, whereby it leased for a term of twenty-one years with the privilege of renewal for three years a block of property at Coney Island, bounded by Strattan's Walk, The Bowery, Henderson's Walk and Surf avenue. The plaintiff thereafter sublet the same premises, with the exception of a store reserved by it for its own purposes, to one Jacobs, who thereafter assigned the lease to the defendant Anderson Holding Corporation. The tenant and subtenant each agreed to pay all taxes, assessments and charges for upkeep, etc., during the life of the lease.

The lease contained a provision by which the parties stipulated that in the event that the whole of the demised premises should be taken in condemnation proceedings for any purpose, the lease would terminate and all obligations thereunder cease, and further, that if a part only of the premises was taken in such proceedings, the tenant had the option of canceling the lease and terminating all obligations thereunder, or at its election the lease should continue in effect as to such portion of the premises as should not have been taken, " and the rent, taxes and all payments required to be made by the tenant hereunder shall be adjusted and apportioned so that the tenant shall only be required to pay for the remainder of the term a ratable as to value and just proportion of the rent and taxes herein required to be paid by it." The lease, however, provided that in the event of a partial taking the landlord would pay the amount of alteration charges and improvements expended or incurred by the tenant during the term of the lease, etc., but in no event exceeding the sum of $100,000.

Thereafter proceedings were begun by the city of New York to condemn a part of the premises in question, and title thereto

by resolution of the board of estimate and apportionment passed to the city of New York on the 26th day of March, 1923. The tenant exercised its option and elected to continue as a tenant of the property during the unexpired term of the lease. It paid the quarterly rent which became due subsequent to the date of vesting title without knowledge that title had passed to the city. Subsequently the owners and the tenant entered into a stipulation, which provided that the tenant should pay an amount equal to fifty per cent of that reserved in the lease pending the determination of the question as to the amount which the tenant was obligated to pay under the terms of the lease.

The subtenant has counterclaimed against the tenant for a relief similar to that asked by the tenant against the owner. The lease between the plaintiff and the subtenant provided for the payment of rental somewhat in excess of that reserved in the original lease, otherwise the terms of the sublease are practically the same as the original lease.

Condemnation proceedings to fix the value of the property taken were brought on for trial in this court and an award made to the owners of $604,129.79. The total value of the land before taking was fixed in that proceeding at $662,348.66, and the value of the land remaining at $324,429.87. The total land damage, therefore, as fixed in that proceeding amounted to $337,918.75. The improvements on the property were regarded both by the owners and the city in that proceeding as being a total loss by reason of the taking, and the value thereof fixed at $266,211.

The area taken in that proceeding amounted to approximately fifteen thousand square feet or, in area, about one-half of the demised premises. Strattan's Walk, which was a narrow alleyway not amounting in width to a street, was completely wiped out, and Stillwell avenue, a street of about sixty feet in width and extending from Surf avenue to the Boardwalk, was created. It is claimed by the owner that the value of the property after the taking, considering the benefits accruing to the property by reason of the improvement which included the creation of a wide thoroughfare leading from Surf avenue to the ocean instead of the small alleyway theretofore existing, gave the property remaining after the taking a value almost equal to the value of the whole premises prior to the taking. The testimony offered by the defendants on this proceeding fixes the value of the land before the taking at the same amount as was claimed by the city in the condemnation proceedings, which is considerably lower than the value testified to by the owner's witness in this action, or than that fixed by the award in the condemnation proceedings. There is little differ-

ence between the testimony of the witnesses called by the parties as to the gross rental value of the property.

This action is brought for a declaratory judgment which shall fix the amount of the rental to be paid from the date of vesting title in the city to the termination of the lease and to recover excess rentals, if any, paid by the tenant subsequent to the date of vesting title. The lease fixes the method by which that rental must be determined, so that the statute designed to meet a situation such as this (Greater N. Y. Charter, § 979, as added by Laws of 1915, chap. 606) has no application.

The only serious question in this action is the method to be adopted in fixing the amount of rent which the tenant should pay from March 26, 1923, to the termination of the lease. The tenant urges that it is entitled to an abatement of the rent in the ratio that the value of the part remaining bears to the value of the whole premises, the values to be fixed as of the date when title vested in the city of New York, while the owner insists that the amount of the rent be fixed in the same proportion that the value of the part remaining, considering the benefits gained by reason of the improvements, bears to the value of the demised premises before the taking; or if this method be not adopted, that the rental be fixed in the same ratio which the rental value of the part remaining bears to the rental value of the whole premises before the taking. If the values of the premises and the rental values as urged by the owner be adopted, the result would be practically the same.

Inasmuch as the rights of the parties must be determined by the provisions of the lease, it may be readily understood that there is no binding authority or any authority in fact, which will serve as a precedent for the determination of that question. The solution depends upon the construction of the phrase " ratable as to value and just proportion of the rent and taxes herein required to be paid by it."

It seems manifestly unfair and inequitable that the owner should collect upwards of $600,000 as damages for the property taken in the condemnation proceedings and then hold the tenant for approximately the full amount of the rental reserved in the lease of the premises, about one-half of which in area has been taken for public purposes. The owner was entitled, of course, to the entire award for the property taken in the condemnation proceedings. The lease provided that the tenant should have any award made to it for loss of business, which damage, however, should not be deducted from the award for the real property and improvements. The claim of the tenant for damages, however,

was disallowed in the condemnation proceedings for the reason that by the terms of the lease the lessee and consequently the sublessee were precluded from recovering for loss or for any damages for the value of the leasehold.

By the common law rental reserved in the lease would have been reduced in the ratio which the part taken bore to the whole. (*Gillespie* v. *Thomas,* 15 Wend. 464.) That rule could not be challenged as inequitable. The parties here, in making the lease, might have provided in terms of no uncertainty the exact method by which the rental after the taking, in the event the tenant elected to continue, should be fixed. They apparently felt that the provision of the lease in question definitely fixed the method for adjustment. It seems unreasonable that they could have contemplated that the remainder after the taking would have a value approximating that of the demised premises prior to the taking.

There is nothing to indicate that they knew just what premises were to be taken. In fact, the provisions of the lease lead to the inevitable conclusion that they were in doubt as to whether the whole or part of the premises would be taken in what may properly be termed a rumored improvement. The lease was made two or three years before the proceeding to condemn was initiated. The parties were not able to foretell what would be the result of that improvement. It seems reasonable that the question of determining the amount to be paid as rent based upon the value of the remainder after considering the benefits added by the improvements, was not contemplated by the parties or by the counsel who prepared the lease. It would be inconsistent, therefore, to assume that the parties had in mind any method of fixing the amount of the lease except by determining the value of the remainder prior to the taking. To hold otherwise would be to violate what appears to be the expressed intention of the parties. If the owner's contention is to be sustained, the part of the premises remaining after the taking had an enhanced value by reason of the proposed improvement the moment the title vested in the city of New York. Counsel apparently realizes the inconsistency of that, because in the brief for the owner it is conceded that there should be a reduction for the period from the date of vesting title to the opening of Stillwell avenue. The enhanced value of the remainder was not created by the opening of Stillwell avenue. It was created by reason of the improvement, and of course the value of the remainder by reason of the improvement could not be considered in the condemnation proceedings. (*Matter of City of New York,* 190 N. Y. 350.) So that, in the finding by the trial judge of the value of

the remainder after the taking, he could not and did not consider the benefit to the remainder by reason of the public improvement. Consequently it seems that when the parties incorporated into the lease the provision that in case of a taking by the city of New York the tenant should be required to pay only for the remainder of the term " ratable as to value and just proportion of the rent and taxes herein required to be paid by it," the parties intended that the rent should abate in the same proportion as the value of the remainder bore to the whole of the demised premises prior to the vesting of title in the city of New York.

There is considerable difference between the testimony of the owner and that of the tenant as to values. The testimony of the witnesses on values cannot be reconciled, and there is little to be gained by attempting a reconciliation of their views. The tentative decree and the opinion of Mr. Justice BENEDICT, who presided at the trial to fix values, sets forth in detail and with meticulous care the values of the whole prior to the taking and the value of the remainder. These values in addition to having judicial sanction seem to be fair and adequate, and I have heard no complaint from the owners about such values although it appears that objections to the awards have been filed by them. This is, no doubt, a passing gesture, as are the filing of most objections in condemnation proceedings. Probably no one would be more disappointed than the owners if the objections were sustained.

The result reached by the method here suggested seems to be fair and equitable to the tenant and owner alike. The owners have an award of $604,000 from a part of the demised premises. They have paid, in accordance with the provisions of the lease, for repairs, a sum a little in excess of $100,000, so that, after this expenditure and the payment of the expenses of the condemnation proceedings, there remains approximately $450,000. This sum invested at five and one-half per cent would bring a return of $24,750 per annum. The application of the rule here suggested leads to a reduction of rent, so that the tenant will be required to pay forty-nine per cent of the amount reserved in the lease. By adding to the amount of the rent as thus reduced the income from the proceeds received from the part taken by the city, the return to the owners will be slightly in excess of the amount reserved in the lease.

This conclusion necessarily leads to a judgment for a recovery by the plaintiff from the owner of the excess paid as rent from the 26th day of March, 1923, which may be calculated by counsel and inserted in the judgment, and for a declaratory judgment directing that the rent paid by the tenant from the date of vest-

ing of title in the city to the expiration of the lease shall be forty-nine per cent of the amount reserved in the lease and similarly adjusting the rent between the tenant and subtenant. Let findings and judgment be settled on five days' notice.