# Illinois Official Reports

## Appellate Court

---

### *Department of Transportation v. 600 West Dundee, LLC,*
### 2019 IL App (1st) 181699

---

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF TRANSPORTATION, for and on Behalf of the People of the State of Illinois, Plaintiff, v. 600 WEST DUNDEE, LLC; ONE WEST BANK; WESTERN EQUIPMENT FINANCE, INC., a North Dakota Corporation; BEN KRUPPA; LC BUFFALO GROVE, LLC, an Illinois Limited Liability Company; FIRST MIDWEST BANK; MARKET SQUARE RESTAURANT, INC.; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (600 West Dundee, LLC, Defendant-Appellee; Market Square Restaurant, Inc., Defendant-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-18-1699 |
| Rehearing denied<br>Filed | April 16, 2019<br>May 7, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-50044; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David A. Epstein, of D.A.E. Law Office, of Chicago, and Gary A. Weintraub, of Gary A. Weintraub, P.C., of Northfield, for appellant. |

William E. Ryan, Timothy J. Ryan, Michael W. Ryan, and Lauren E. Ryan, of Ryan and Ryan, of Rosemont, for appellee.

Panel            PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1       Tenant, defendant-appellant Market Square Restaurant, Inc. (Market Square), appeals the trial court's finding that it was not entitled to any portion of a condemnation award that its landlord, defendant-appellee 600 West Dundee, LLC (600 West Dundee), received relating to the Illinois Department of Transportation's (IDOT) partial taking of the leased premises.[1] We affirm the trial court's finding that under the plain language of the lease's condemnation clause, Market Square was entitled to a rent adjustment relating to the portion of the premises partially taken, but not a portion of the condemnation award.

¶ 2       On March 2, 1978, Market Square (f/k/a Uncle Tom's, Inc.) and 600 West Dundee's predecessor-in-interest[2] executed a 35-year ground lease, commencing on September 1, 1978, and ending on August 31, 2013, on unimproved real estate (an out-lot) located at 600 West Dundee Road in Wheeling, Illinois, at the southwest corner of the Lynn Plaza Shopping Center. The leased premises totaled 15,594 square feet. On the leased premises, Market Square constructed a restaurant/lounge building. Pursuant to the lease's terms, Market Square exercised a one-time option to extend the lease for a period of 15 years, commencing on September 1, 2013, and expiring on August 31, 2028. Beginning on December 5, 2013, Market Square paid $5500 a month as agreed use and occupancy.[3]

---

[1] 600 West Dundee initiated two proceedings against Market Square years before the condemnation proceedings commenced. In the first action, 600 West Dundee asserted that Market Square breached the lease by using a portion of the premises for video gambling (case No. 11-CH-39924). In the other action, 600 West Dundee brought a forcible entry and detainer action seeking to evict Market Square based on its improper use of the premises (case No. 2014-M1-709886).

On January 13, 2017, the trial court ruled that Market Square's operation of video gaming terminals on the premises was not consistent with the stated purpose of the lease to operate a restaurant/lounge. The forcible entry and detainer action remained pending at the time of this appeal.

[2] Amalgamated Trust and Savings Bank Trust No. 2213 (Trust No. 2213) originally executed the lease as the ground lessor and Lynn Plaza LLC was the successor-in-interest to Trust No. 2213. In February 2014, the premises was conveyed to 600 West Dundee.

[3] On December 5, 2013, the trial court entered an agreed use and occupancy order setting monthly rent at $5500, without prejudice as to the final determination of rent for the 15-year option term. Under section 35 of the lease, the "fair rent" that Market Square was to pay during the extended option term would be determined by arbitration. At the time of this appeal, the amount of fair rent remained undetermined.

¶ 3        Section 26 of Market Square's lease addressed the "Effect of Eminent Domain," and states in relevant part:

>    "(b) *Effect of Partial Condemnation.* \*\*\* In the event of partial taking and Lessee does not terminate this lease, then this lease shall continue in full force and effect as to the part not taken, and the rental to be paid by Lessee during the remainder of the term shall be subject to adjustment based upon provisions set forth hereinafter."

There is no dispute that although section 26(b) referenced "provisions set forth hereinafter," the lease did not include a provision detailing the formula to use or factors to consider in computing the rent adjustment.

¶ 4        IDOT planned to improve and widen the intersection of Dundee Road and Wheeling/McHenry Road. On January 26, 2016, as part of that improvement project, IDOT filed a complaint for condemnation under the Eminent Domain Act (Act) (735 ILCS 30/1-1-1 *et seq.* (West 2016)) to acquire (i) full fee simple absolute title to approximately 1220 net square feet of land (designated as Parcel No. 0KJ0009 (Parcel 1)) and (ii) a temporary easement for construction purposes for five years (expiring in 2021) or upon completion of construction, whichever occurred first,[4] in, over, and across approximately 915 square feet of land (designated as Parcel No. 0KJ0009TE (Parcel 2)). At the time of condemnation, approximately 12 years remained in the lease term.

¶ 5        Ultimately, the trial court vested IDOT with the full fee simple absolute title to Parcel 1 and the temporary easement over Parcel 2 and fixed the preliminary and final just compensation award (final condemnation award) for IDOT's partial taking at $215,000, allocated as follows:

| | |
|---|---|
| Parcel 1 (fee simple title) | $ 41,625 |
| Parcel 2 (temporary easement) | 36,625 |
| Damages to the remainder | 136,750 |
| Total | $215,000 |

Market Square objected to 600 West Dundee's entitlement to the preliminary and final condemnation awards. Specifically, Market Square filed a motion for apportionment of the final condemnation award, claiming that as lessee under the long-term ground lease, it was entitled to $156,744 of the final condemnation award as compensation for (i) IDOT's temporary easement over the leased premises ($36,625), (ii) estimated damages it would incur to restore the premises after IDOT completed the construction project ($26,433), and (iii) the present value of the rent adjustment provided for under section 26(b) ($93,686). The trial court ruled against Market Square, finding that, under the lease, Market Square was entitled to a rent adjustment as to the part of the premises taken[5] but not to anything other than the lease's continuation as to the part of the premises not taken. Dissatisfied with the trial court's ruling denying it any portion of the final condemnation award, Market Square now appeals.

---

[4]Market Square represents that IDOT's construction project has been completed.

[5]Since the trial court's order granting 600 West Dundee's motion to withdraw the preliminary compensation award, Market Square and 600 West Dundee have been participating in ongoing settlement conferences to compute the rent adjustment referenced in section 26(b). Nothing in the record reveals that the parties have reached an agreement regarding the proper rent adjustment amount.

¶ 6        Market Square renews its claim that it was entitled to $156,744 of the final compensation award, arguing that its leasehold interest in the property partially taken was directly affected and nothing in the lease limited its remedy for the partial taking only to the rent adjustment. We disagree.

¶ 7        Although the Act generally provides interested parties with the authority to petition for withdrawal of all or part of a condemnation award according to the fair value of their legal or equitable interests (735 ILCS 30/10-5-90 (West 2016)), parties to a lease are free to include a provision governing their rights in the event of a condemnation proceeding (*Village of Palatine v. Palatine Associates, LLC*, 406 Ill. App. 3d 973, 981 (2010)). The lease here included such a provision and dictates Market Square's rights relating to the partial taking. See *id.* (language of the lease governed whether the lessee had any rights to the condemnation award). Like any other contract, we review a trial court's interpretation of the provisions included in a lease *de novo. Benford v. Everett Commons, LLC*, 2014 IL App (1st) 131231, ¶ 14.

¶ 8        We find that the lease Market Square agreed to and executed contained definite and precise language that a rent adjustment was Market Square's remedy in the event of a partial taking that did not result in the termination of the lease. See *Clarendon America Insurance Co. v. Prime Group Realty Services, Inc.*, 389 Ill. App. 3d 724, 729 (2009) (a lease containing definite and precise language speaks for itself); see also *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 13 (a lease is a contract and normal principles of contract interpretation apply). The fact that the lease was silent regarding the method of computing the rent adjustment has no bearing on Market Square's agreed-to remedy in the event of a partial taking nor does it justify ignoring the rent adjustment remedy provided for in the condemnation clause. Importantly, the absence of the provision to compute the rent adjustment referenced in section 26(b) would have been equally obvious to Market Square and 600 West Dundee at the time the lease was executed. And had the lease included a provision detailing the method of computing the rent adjustment in the event of a partial taking, Market Square would have had no basis to claim entitlement to any portion of the final compensation award, which would have been distributable to 600 West Dundee. Likewise, delaying distribution of the final compensation award was not warranted merely because the parties had not yet agreed upon the proper computation of the rent adjustment.

¶ 9        Many of Market Square's claims address the factors that should be considered in computing the rent adjustment, *e.g.*, the temporary easement prohibited use of the designated premises and actual costs incurred to restore the premises, but those considerations do not alter Market Square's agreement to a rent adjustment as its remedy in the event of a partial taking. *Leonard v. Autocar Sales & Service Co.*, 325 Ill. App. 375 (1945), provides no support for Market Square's position that the temporary easement granted to IDOT entitled it to a portion of the final compensation award. The tenant in *Leonard* was entitled to the compensation award because, unlike Market Square, it remained obligated to pay the rent in full even though it could not use its premises during the temporary easement period. *Id.* at 391; see also *Department of Public Works & Buildings v. Metropolitan Life Insurance Co.*, 42 Ill. App. 2d 378, 384 (1963) (reciting the rule that a tenant is not entitled to an abatement or apportionment of rent in a partial taking and must pay the rent in full but is entitled to the just compensation award). *Leonard* does not stand for the proposition that a tenant is entitled to a portion of the compensation award in addition to a rent adjustment.

¶ 10    Market Square points to nothing in the lease's condemnation clause entitling it to an apportionment of the final compensation award where, as here, a partial taking has occurred and the lease does not terminate. Under section 26(b), the lease continues in full force and effect and Market Square is entitled to a rent adjustment for the remainder of the lease term. Because Market Square and 600 West Dundee agreed in the lease to alter the rights of interested parties under the Act, Market Square was not entitled to any portion of the final compensation award under the lease. Given this conclusion, we need not address its claims regarding the applicability of the fair valuation rule or the proper allocation of the final condemnation award.

¶ 11    Affirmed.