The Department of Public Works and Buildings, Plaintiff, v. Metropolitan Life Insurance Company, a Corporation of New York, LaSalle National Bank, as Trustee Under Trust No. 18997, Henry M. Jung, et al., Defendants.

On Appeal of LaSalle National Bank, as Trustee Under Trust No. 18997, Defendant, Appellant, Cross-Appellee, v. Henry M. Jung, et al., Defendants, Appellees, Cross-Appellants.

Gen. No. 48,881.

First District, Second Division.

May 29, 1963.

Rehearing denied and opinion modified
September 25, 1963.

379

Koven, Koven, Salzman & Homer, of Chicago (Paul Homer and Robert Rosenman, of counsel), for defendant, appellant, cross-appellee.

Ader and Ader, of Chicago (Zeamore A. Ader, of counsel), for appellees and cross-appellants.

MR. JUSTICE BURKE delivered the opinion of the court:

The Department of Public Works and Buildings of Illinois filed a petition to condemn certain real estate in Cook County. An award of $14,600 was made with

respect to the land subject to a 99-year lease. The amount of the award was not contested. Subsequently the tenant filed a petition for apportionment of the award between itself and the landlord. In a trial without a jury the tenant was awarded $8,300 and the landlord $6,300. The tenant, appealing, asks that the judgment be reversed and that the entire amount be awarded to it. The landlord, in a cross-appeal, asks that it receive a larger share or in the alternative, that the judgment be affirmed.

On April 18, 1956, the parties entered into a 99-year lease of approximately 16.2 acres of land adjoining and adjacent to Milwaukee Avenue and near Golf Road, for a term commencing May 1, 1956, to and including April 30, 2055 at an agreed rental of $8,000 per year, payable semi-annually, which rental is subject to no deductions or abatements whatsoever. The lease gives the lessee an option to purchase the tract for $160,000 exercisable between the 14th and 20th lease years. The present value of the land subject to the option is $1,500,000 according to lessee's witness or $700,000 according to lessor's witness. The lease also stipulates that the lessee (1) is to pay all real estate taxes and various other charges imposed on the land, (2) has the free, unrestricted right of improvement of the premises, (3) may mortgage or assign its leasehold interest without the landlord's consent, and (4) must not encumber lessor's title. The lease further provides that upon partial or total condemnation, the lessee has the right to prosecute claims for injury to its interest and that any condemnation award is to be divided fairly and equitably between the fee simple estate and the leasehold estate.

On June 1, 1960, the Department filed its petition against the owners and other parties having an interest in the land to be taken for the purpose of improving the Golf Road-Milwaukee Avenue intersec-

tion. The leased area was vacant except for a small frame building housing a tavern. One of the tracts involved was designated in the suit as "Parcel 16," a strip of land abutting on Milwaukee Avenue which was to be taken for the purpose of widening that thoroughfare. All of "Parcel 16" was included under the 99-year lease between the parties to this appeal. Both lessor and lessee were named parties defendant with respect to the parcel and both filed appearances. The court entered an order, without trial, awarding a total of $14,600 as just compensation to those having an interest in "Parcel 16." The award consisted of $12,100 for damage to the land taken and $2,500 for damage to the remainder of the realty of which "Parcel 16" was a part. The entire tract subject to lease consists of 705,960 square feet; the area taken consists of 11,960 square feet or approximately 1.69% of the total area.

The parties introduced various plats and the 99-year lease. Lessee introduced the testimony of a real estate broker and appraiser who stated that the fair market value of the entire fee on the date of the condemnation, subject to the 99-year lease, was $135,000–$160,000, arriving at this determination on the basis that for the investment of $160,000, the return (rental) is $8,000 annually, or 5% of the investment. He estimated the fair market value of the leasehold property taken on the date of condemnation at $23,000. He testified that in matters like the instant case, no reversionary value is attributed to the fee, and that since the rent continued unabated notwithstanding the condemnation, there was no reason to capitalize any loss of income to lessor; that, therefore, the lessor suffered no loss and that the award should belong wholly to the tenant. He estimated the square foot value of the fee on the date of condemnation at $1.50 per square foot. Lessee's attorney testified as to the

square foot value of the contiguous land for comparison purposes, indicating a $1.50 per square foot value for the property under the lease.

The lessor's witness, a broker and appraiser, testified that the fair market value of the fee, subject to the lease, on the date of condemnation, was $286,000. When queried as to the rate of return (rentals) accruing to an investor purchasing the fee for this price, he stated that the fee could not be sold at this price because of the low rate of return, but that this did not affect his estimate of the fair market value. He maintained that the fee ownership had a reversionary value of $286,000, notwithstanding that the property would not and could not be sold for this price because nobody would purchase it. Thus, the lessor's expert testified that the value of the fee subject to the lease on the date of condemnation was $286,000 and that this was also the reversionary value of the fee. His estimates were based upon a valuation of the land at $1.00 per square foot. Lessor's witness testified as to the rental value of the leasehold, attributing a value to it of $41,600 per year as compared with the stipulated rent in effect of $8,000 per year. There was a stipulation, "that the lease is held in a land trust, the trustee being the lessee, and there are no assets in value or money or anything in the trust except the lease, and there is no personal liability on the lease."

The lessee's theory is that it is entitled to all the award, or $14,600. The lessor's theory is that the parties expressly contracted in the lease that "any and all condemnation awards or judgments shall be divided fairly and equitably between the fee simple estate and the leasehold estate"; that this agreement must be enforced and the award divided between them fairly and equitably according to equitable principles; that common-law condemnation rules of ap-

portionment are not equitable and do not apply and that the landlord is entitled to the amount awarded to it or to a greater portion.

It is well established that lessees for years holding under a valid lease have such an interest in real property as to be classified as owners in the constitutional sense and are entitled to compensation for the taking of their interest in the property. Corrigan et al. v. City of Chicago, 144 Ill 537, 543, 33 NE 746; Stubbings v. Village of Evanston, 136 Ill 37, 41, 26 NE 577. It is not disputed that the tenant has an interest under the lease nor is there a dispute respecting tenant's continuing obligation for rent at the annual rate of $8,000 without deductions or abatement whatsoever. In the Stubbings case, a strip of land subject to a leasehold was condemned for purposes of extending a city street. The remainder of the premises leased was tenantable. The court held that the tenant would continue to be liable for the full amount of rent and could not claim an eviction against the landlord. The case established the rule in Illinois that the tenant is not entitled to an abatement or apportionment of the rent where only a part of the land is taken by eminent domain proceedings and that he is entitled to just compensation for the damages to the leasehold. See Yellow Cab Co. v. Stafford-Smith Co., 320 Ill 294, 296, 150 NE 670; Leonard v. Auto Car Sales & Service Co., 325 Ill App 375, 60 NE2d 457. In recognition of this rule in the instant case the lessee offered to waive all right to the award if the lessor would permit a proportionate abatement in rent. The lessor refused any abatement. Thus, the tenant remains liable for the full rent on all the leased premises despite the fact that a portion thereof has been taken for public use. The tenant argues that where the rent continues unabated as to the premises taken and the fee is subject to a long-term "bonus" lease,

the landlord is entitled to no compensation for his reversionary interest in the land taken and that under the undisputed facts the tenant is entitled to all the award. The landlord points out that the parties to leases may validly contract as to how awards in condemnation cases shall be apportioned between the landlord and the tenant, citing United States v. Advertising Checking Bureau, Inc., 204 F2d 770 and City of St. Louis v. Senter Commission, 233 Mo App 804, 108 SW2d 1070. The landlord insists that in the lease in the instant case the parties expressly contracted that any condemnation awards or judgments shall be divided fairly and equitably between the fee simple and the leasehold estate and that a fair and equitable division of the awards sustains the judgment or entitles the landlord to a larger portion. The landlord says that the authorities cited by the tenant are inapplicable to the factual situation in the case at bar.

The lease is a nonabatable 99-year lease which, on the condemnation date, June 1, 1960, had approximately 95 years to run. Rent on the entire tract, including the part taken, will continue to be payable at the full amount under the lease, of $8,000 per year, for the remainder of the term. Only a partial condemnation of the fee subject to the leasehold is involved. The instant case involves a partial taking under a long-term lease. In Corrigan et al. v. City of Chicago, 144 Ill 537, 33 NE 746, a medium-term lease situation, the facts involved a total taking under a 26-year lease having run for several years. The tenant's liability for rent having necessarily ceased, the landlord's share of the award was set as the sum of: (a) The present value of the rents reserved, and (b) The present value of the reversionary interests. The tenant was to receive: (a) The value of the leasehold, subject to the rents covenanted to be paid. The court said, by way of dictum, p 544, "If the covenant to pay rent is not

affected by the proceedings and judgment of condemnation, it is clear that the lessor would be entitled as compensation only to the present value of his reversion, which he holds subject to the term created by the lease; . . ." The Corrigan rule was adopted 16 years later in a long-term lease situation. In Chicago & N. W. Ry. Co. v. Chicago Mechanics' Institute, 239 Ill 197, 220, 87 NE 933, the court was faced with condemnation of a fee subject to a 99-year lease which, at the time of condemnation, had approximately 80 years to run. All of the property subject to the lease was being taken. Rents terminated upon total condemnation. The landlord contended that he was entitled to the present value of the rents reserved plus the value of the reversion, and cited the general rule in the Corrigan case. The court found that the landlord was entitled to receive the capitalized value of the rents reserved in the lease, based upon the fact that the condemnation terminated the tenant's liability to pay rent, but rejected the contention of the landlord that he was entitled to an additional sum representing the value of the reversion, despite the fact that two witnesses for the landlord testified that the present market value of the reversion was $20,-000, saying, p 221, "Whether this reversion is of any value must be largely speculative. It cannot be concluded with any certainty that the property in question will increase in value as the years go by. Judging the future of Chicago by the history of other cities, this property three-quarters of a century from now may be worth much less than it is at present."

██ Orgel, in Valuation under Eminent Domain, 2nd Edition (1953), Vol 1 (Note 99, p 534), cites City of Chicago v. Lord, 276 Ill 544, 115 NE 8, in support of this rule, stating that: "where the leases were for approximately 30 years with an option for renewal for an additional period of 20 years, the appellate court held that it was not error to exclude

evidence as to the value of the reversion after the expiration of the leases. The witnesses valued the property 'at what they considered it worth on an investment basis as producing 5% in rents on the amount they considered it worth' and testified 'that this method was the usual and customary one in Chicago among real estate men in valuing fees in real estate subject to leases such as were in evidence in this case.'" Illinois courts have consistently held that a reversion after a long-term lease has no market value. Chicago West Division R. Co. v. Metropolitan West Side El. R. Co., 152 Ill 519, 526, 38 NE 736. The same rule has been cited in Blackstone Memorial Library Ass'n et al. v. Gulf, Mobile & O. R. Co., 264 F2d 445. See also City of St. Louis v. Senter Commission, 233 Mo App 804, 108 SW2d 1070. The Illinois cases hold that the landlord is entitled to (1) the present value of rents reserved, except where rent is not abated or terminated, and (2) the present value of his reversionary interest, except in long-term lease situations. Applying the law to the facts of the instant case, the landlord is entitled to nothing from the award. He is still entitled to the full rentals, $8,000 per year, for 95 years, the remainder of the lease term after condemnation. Because the lease is a long-term lease within definition of the Illinois courts and generally accepted real estate concepts, the attribution of any present value to his reversionary interest (assuming probative evidence has been introduced concerning such value) is so speculative that it must be wholly disregarded. The trial court failed to take cognizance of the holdings in the Corrigan and Mechanics' Institute cases by splitting the award, without considering that the landlord sustains no real economic damage under the facts of the case.

Putting aside the speculative nature of a long-term lessor's reversionary interest and assuming that the realty may at the expiration of 95 years, have the

same value attributed to it as now obtains, an examination of the mathematics behind the Illinois holding that there is no present value attributable to a reversion after a long-term lease indicates that exactly the same result ensues. Since the landlord has only a reversionary interest 95 years after the condemnation date, the determination is predicated upon establishing a sum which, if deposited now at compound interest in an expressed amount, would eventuate, upon termination of the leasehold, in his receipt of the amount estimated as his loss. This amount, under the relevant evidence, may be actuarially determined as follows: (utilizing Financial Compound-Interest and Annuity Tables, First Ed (1955, p 673). Let us assume that the subject land taken (representing an area equal to 1.69% of the leasehold) is valued three ways —at $14,600, the gross amount of the award; at $11,-930 or 1.69% of $705,960, being the value of the fee at $1 per square foot placed thereon by the landlord's witness; and at $17,896 or 1.69% of $1,058,940, being the value of the fee at $1.50 per square foot placed thereon by the tenant's witness. The value of the landlord's reversion on June 1, 1960, under the tables applying a rate factor of 95 years at 5% (.00971) to $14,600 is $141.70. In applying the rate factor to $11,-930 the value of the reversion on the condemnation date is $115.84. With evaluation of $705,960, the landlord's reversion is $115.84 and applying the rate factor for 95 years the total value of the property taken at $17,896 based on the valuation of $1,058,940 set by tenant's witness gives the value of the landlord's reversion on the condemnation date at $173.77. It is not surprising that disregarding the element of speculation that these small amounts are disregarded by the Illinois courts.

Some of the Illinois cases reversed the computation of the apportionment between landlord and ten-

ant by first determining the tenant's interest and awarding the residue, if any, to the landlord. The condemnation formula applied in Corrigan and enunciated in Yellow Cab Co. v. Howard, 243 Ill App 263, p 280 is that ". . . where the entire leasehold interest of the lessee is taken . . . , the lessee's compensation is the value of the leasehold estate, subject to the rent covenanted to be paid; that if the value exceeds the rental, the lessee will be entitled to the excess . . . ."

This rule sets forth the right of the lessee to receive its "bonus" value. The foregoing rule evolved from cases involving a total condemnation, with the rental obligation extinguished. The rule logically extends to partial condemnations, where the rental obligation continues. Under such facts, the tenant's award will include "not only the fair market value of that part of his leasehold which is taken, but also an amount sufficient to meet his continued rental obligation on the part of the premises condemned." Symposium, Methods of Establishing "Just Compensation" in Eminent Domain Proceedings in Illinois, Ill Law Forum 1957, 289, 306. In other words there will be added to the "bonus" value the present worth of the rentals required to discharge the rental obligation as to that part of the property taken but for which rentals are nevertheless required to be paid. See also Sando, "Appraisal of Leasehold Interest" Third Annual Institute of Eminent Domain, Southwestern Legal Center (1961).

The annual rental for the entire tract is $8,000, payable semi-annually. The proportionate rental for the tract taken is $135.20 ($8,000 x .0169). Thus, with respect to the portion taken the tenant is required to pay $67.60 semi-annually for the next 95 years to discharge its rental obligation in respect to the land which is no longer a part of the leasehold. Thus,

389

the lump sum award to the lessee will be that amount which if placed in an account at compound interest of 5% would be sufficient to permit the lessee to draw out the sum of $67.60 semi-annually for 95 years for purposes of paying rental on the part taken, so that the account and the lease would terminate at the same time. Actuarially, such lump sum award would be $2,679.20. Financial Compound Interest and Annuity Tables, 1st Ed 1955, p 565.

The tenant has suffered additional damages under the rules cited. Evidence as to the fair market value of the leasehold on the annual rental basis was offered by the landlord's witness, who testified that the leasehold rentals for the entire tract should have been substantially higher than those received by the lessor; that such rentals should have been $41,600 per year instead of $8,000 per year and that the lessee had a clear "bonus" or "bargain" lease, under prevailing market conditions. The tenant has lost a portion of the "bonus" lease, and the Illinois cases reward him with the present value of a sum of money to compensate for the loss, measured by the difference, annually, between the rent payable on the piece taken and the "fair market value" of rental applicable thereto, which tenant would be obligated to pay were he to lease a similar piece elsewhere. Corrigan et al. v. City of Chicago, 144 Ill 537, 548, 549, 33 NE 746. The "bonus" rental for the entire tract is $41,-600 per year, or $703.04 with respect to the parcel taken. Therefore, the difference between the bonus and contract rental ($703.04 minus $135.20), or $567.-84 is the amount of loss. The present worth of $567.-84 per year for 95 years discounted at 5% is $11,-246.58. Financial Compound Interest and Annuity Tables, 1st Ed (1955, p 673). This Illinois rule is favored by many authorities. See Sackman, "Compensation Upon the Partial Taking of a Leasehold Interest," Third Annual Institute of Eminent Domain,

Southwestern Legal Center (1961), p 35. Thus, the total real loss to the tenant on the part taken is $13,925.78 ($2,679.20 plus $11,246.58), well in excess of the award of $12,100 applicable to the part taken. The tenant's damage exceeds the amount of the award. No question is raised as to the overplus, as the total amount of the award is uncontested. The landlord is not entitled to any share of the award under this formula.

██ ██ The sum of $2,500 was awarded for the damage to property not taken but covered by the 99-year lease. The tenant is entitled to compensation for the consequential damages which have been inflicted upon the residue of his leasehold. "Symposium, Methods of Establishing 'Just Compensation' in Eminent Domain Proceedings in Illinois," Ill Law Forum 1957, 289, 306. As the lease had 95 years to run on June 1, 1960, the landlord's portion of the $2,500 award is the present value of his reversionary interest therein, or $24.28, and in accordance with the trend of Illinois cases an interest so minimal is disregarded for apportionment purposes. Chicago & N. W. Ry. Co. v. Chicago Mechanics' Institute, 239 Ill 197, 221, 87 NE 933; City of Chicago v. Lord, 276 Ill 544, 555, 115 NE2d 8; Financial Compound Interest and Annuity Tables, 1st Ed (1955), p 673. Visualizing a factual situation such as in the record here, Polasky, in "The Condemnation of Leasehold Interests," 48 Virginia Law Review 477, 520, Note 106 (April, 1962) said: "It is possible, of course, that the totality of the landlord's compensable interest may be valueless if one assumes a continuing obligation on the part of the lessee to pay rent, a 'bonus' value of the lease and a rather remote reversion discounted at a more than negligible rate of interest, if the award is for the fee and the lessee's compensation is first computed."

In our opinion the tenant is entitled to the total $2,500 damage to the property not taken and remain-

391

ing under the lease. It is clear that whether the interest of the lessor be computed first and the lessee awarded the remainder of the award, or the reverse situation obtains (where the lessee's interest is first carved out of the award and the landlord awarded the balance) the same result follows: the lessor's reversionary interest subject to a long-term "bonus" lease, where the rental obligation continues unabated, is disregarded and the lessee is entitled to the entire award. It is to be noted that the lessor's witness valued the leased fee at $286,000. The value of a fee subject to a lease is the sum of the values attributable to capitalized rents for the term and the reversion at expiration thereof. The lessor's witness also valued the reversion at $286,000. This valuation of the reversion is clearly in error because it disregards the fact that the value of the leased fee includes the reversionary value, if any. The reversionary value must necessarily be less than the value of the leased fee. This witness admitted that no one would buy the lessor's interest for $286,000, his estimate of its value. The lessor having introduced neither credible nor probative evidence with respect to his reversionary interest, no value, under the evidence presented, could be attributable to it. The obligation to pay rent continuing, the lessor proved no monetary loss and is entitled to no part of the award.

The landlord notes from the testimony that the condemnation was to give uniformity to the right of way above, below and opposite the premises. The four-lane highway without a median strip became a six-lane highway with a median strip. Mobility of traffic was improved, achieving the highest and best use for the property. The landlord points out that this was a benefit to the tenant without a correlative benefit to the landlord. The condemnation replaced open ditches with underground sewers and catch basins and provided better ingress and egress to the

land which are special benefits to the leasehold. The value of the leasehold increases from a rental value of $8,000 per year as provided in the lease to a rental value of $41,600 per year, an increase in rental value of $33,600 per year, or approximately four times. The witness for the landlord testified that an increase in leasehold value of about $20,000 occurred since June 1, 1960 and that the principal reason for the increased value of the land is the widening of the road in front of it. He testified that the leasehold suffered no damage by the condemnation. A witness for the tenant testified that the broadening and improvement of the highway over the land taken increased the facility of highway traffic in the area and that the improvement of the highway helped increase the value of the leasehold. There is no testimony of damage to the leasehold. The landlord says there is a loss to the landlord of 11,960 square feet of fee land and no loss to the tenant and that at most the tenant should receive the present value of the rent for the strip for 95 years or $2,679.20 and that the balance of $11,420.-80 should be awarded to the landlord.

 The rule is well settled in Illinois that compensation for land taken is to be determined as of the date of the petition to condemn, in this case, June 1, 1960, and that evidence concerning subsequent improvement is to be disregarded. Department of Public Works & Buildings v. Divit, 25 Ill2d 93, 182 NE 2d 749; Edlin v. Security Insurance Co., 160 F Supp 487, 488, affd 269 F2d 159, 161. Since neither the fee owner nor lessee could request consideration of the effects of the proposed widening on the value of the land during the trial to determine the size of the award, the landlord is barred from conjecturing as to the effect of the improvement to enlarge his interest in the total award as against his tenant. The U. S. Supreme Court has stated the rule to be that the value "to be ascertained does not include . . .

393

any element resulting subsequently to or because of the taking." Olson v. United States, 292 US 246, 256. Since neither the tenant nor the landlord may receive compensation from the condemning authority for a benefit in futuro, the landlord cannot be permitted to assert the benefit as an element for a greater percentage of an award which specifically excludes any such increment. At best the potential benefit would have possible application only to damages awarded for property not taken. The tenant does not argue that as a matter of law all reversions under long-term leases are worthless. The lessee maintains that lessor's reversionary interest subject to the long-term "bonus" lease, where the rental obligation continues unabated, is disregarded and the lessee is entitled to the entire award.

 The words upon which the landlord places great reliance are contained in the following clause: "In the event that any duly authorized governmental agency shall take any part or all of the demised premises by way of condemnation for street, alley, highway or other purposes, the lessee shall have full right and authority to prosecute any claims by lessee or causes of action to secure compensation for the injury resulting to lessee's interest in the demised premises from any such condemnation, and the lessor shall have full right and authority to prosecute lessor's claims, it being the mutual intention of the parties hereto that any and all condemnation awards or judgments shall be divided fairly and equitably between the fee simple estate and the leasehold estate." The landlord argues in effect that the use of the word "equitably" implies an agreement by the parties to exclude the application of the common-law rules and decided cases usually governing the apportionment of awards between landlord and tenant. The eminent domain acts are statutory and have not been considered equitable

proceedings. In the condemnation clause the parties reserved their respective rights to prosecute claims for aliquot shares of the award and left the computation thereof to the decision of the court. It is axiomatic that equity follows the law. We think that the cases cited by the lessee support its position.

█ █ The landlord asserts that there are no buildings on the land, that the tenant is insolvent, that there is no value or property in the trust except the lease, that a substantial award to the tenant would permit a syphoning off of the fund to suit the tenant's interest, that at tenant's discretion the lease could be forfeited for non-payment of rent and that to award the tenant a substantial portion of the fund would heap benefit on benefit to the tenant without correlative obligation. There is no suggestion in the record of any inability or unwillingness of the tenant to continue to pay the rent reserved under the lease. The lease contains an option to purchase in about 8 years at a price of $160,000. The aggregate rental reserved for the term to such time does not exceed $56,000. The value of the fee estate is either $705,-960 (landlord's valuation) or $1,058,940 (tenant's valuation), or between $489,960 and $842,940 in excess of the cost of acquiring the fee. There should be a strong economic compulsion to maintain the lease in good standing. The long-term leasehold contains all the economic attributes of fee ownership, subject only to the reserved annual rental, and may be developed, sold or otherwise treated as though the fee itself. The record does not show that the tenant is insolvent. The potential insolvency of a tenant has been considered and in each instance the court deemed the issue to be irrelevant. City of Chicago v. Lord, 276 Ill 544, 552–553, 115 NE 8; City of Pasadena v. Porter, 201 Cal 381, 257 P 526; Gluck v. Mayor, etc., of City of Baltimore, 81 Md 315, 32 A 515. For these

reasons the judgment is reversed and the cause is remanded with directions to enter judgment in favor of the lessee for $14,600.

Judgment reversed and cause remanded with directions.

BRYANT, PJ and FRIEND, J, concur.