THE COMMONWEALTH OF PUERTO RICO ET AL., Plaintiffs and Appellees, *v.* SOCIEDAD PROTECTORA DE NIÑOS ET AL., Defendants and Appellants.

No. R-70-193.     Decided October 11, 1972.

844

*González, Jr., González-Oliver, Blanco Lugo & Morán* and *Fausto Ramos Quirós* for appellant. *Fiddler, González & Rodríguez* and *Federico Tilén* for I.B.E.C. Realty Corporation. *Gilberto Gierbolini, Solicitor General,* and *Ruth Tentori Lebrón Velázquez, Assistant Solicitor General,* for The Commonwealth of Puerto Rico.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

The Sociedad Protectora de Niños is the owner of a parcel of land on the Avenida 65 de Infantería in Río Piedras, with an area of 6054.35 square meters. In 1958 the Sociedad leased this parcel to IBEC Realty Corporation for a term of twenty years, agreeing upon an annual rent of $3,600 to be paid in advance. Through clause 14 of the contract, the parties agreed that, in case of condemnation of private property for widening the bordering avenue or marginal streets, the rent stipulated would not be reduced and that any sum recovered for loss sustained by tenant should belong to tenant. Clause 14 reads thus:[1]

---

[1] Clause 14, written in English, reads thus:

"In case of enforced expropriations for the widening of the bordering avenues or marginal streets, rent shall not be reduced in any amount and any sums recovered for loss sustained by tenant shall belong to tenant."

*"En caso de expropiación forzosa para ensanchar las avenidas o calles marginales colindantes, no se reducirá por cantidad alguna el canon de arrendamiento y cualesquiera cantidades que se cobren por las pérdidas que sufra el arrendatario pertenecerán al arrendatario."*

In 1966 the Government condemned 352.62 square meters of the parcel leased, the latter being reduced in its area to 5701.73 square meters. The condemnation was executed for the purpose of broadening the bordering streets. The Government deposited $14,104.80 as assessment value. After a hearing was held the Court of Eminent Domain fixed at $17,634.80, that is, $3,530 more as just value of the parcel condemned. This amount, plus $990.16 for interest was deposited by the Government.

IBEC claimed for itself, and the Court of Eminent Domain acknowledged its right to the totality of the amount deposited as just value of the parcel condemned on the grounds of the terms of clause 14 of the lease contract. Said court held the following:

"The area of the three parcels segregated from the leased tenement is of 352.62 square meters, the latter being reduced to 5701.7 square meters. According to the terms of the contract, the lessee had to continue paying the same rent. The reduction in area did not represent any financial loss whatsoever for the lessor during the term of the contract. But for the lessor [*sic*] that reduction meant a loss in the parking area, and in the facilities of its commercial enterprise.

"Therefore, we are bound to decide that as a consequence the condemnation of the strip of land for the broadening and widening of the streets bordering the land leased is a loss contemplated by the contract and consequently the money recovered for that loss belongs to the lessee."

At the request of the Sociedad we agreed to review.

The controversy between the Sociedad, appellant herein, and IBEC does not involve the state's liability nor is said liability financially affected by any determination which we

may make regarding the extension of the right over the funds deposited which is the controversy which the Sociedad and IBEC raise before this Court in this appeal. That is so, since the fairness of the valuation fixed to the condemned parcel is not questioned.

As a starting point, we think that it may be helpful to make a brief summary of certain general principles which we have followed in the past in the field of condemnations of private property.

■ We held in *People* v. *632 Sq. Mts. of Land,* 74 P.R.R. 897, 905 (1953), that a condemnation suit is a proceeding *in rem.* It is directed not against particular defendants, but against the property itself and that "although the exercise of the power of eminent domain extinguishes all previous rights in the property, the government does not condemn the interest therein of a particular defendant." We have also held that ordinarily, where the domain title to the property is taken, "such items as moving expenses, costs for reinstallation of equipment, and loss of business are not compensable even under a constitutional mandate like ours which requires compensation for property 'taken or damaged.'" *People* v. *McCormick, Etc.; Floor Cov. Co., Int.,* 78 P.R.R. 895, 918 (1956). Therefrom it may be reasonably assumed that, except for the existence of exceptional circumstances, the value of the particular property object of the condemnation should not vary ordinarily because of the fact that there is a lease contract. (*Id.* at p. 900.) In the *McCormick, Etc.,* case, *supra,* we held that (at p. 901) :

"To the extent the lease impairs the value of the dominion title, the lessee must be compensated out of the amount which represents the full value of the dominion title, and not in addition thereto."

That case dealt with a condemnation which as a matter of fact "frustrated" the principal purpose of the lease contract

(which still had 9 months to go before it expired) being like a total condemnation of the property. In said case it was held that "when the purpose for which a lease was executed is destroyed" by a condemnation proceeding, "the lease is terminated and the lessee is no longer liable to the landlord for the rent." *People* v. *McCormick, Etc.; Floor Cov. Co., Int., supra* at p. 920. There we acknowledged the right of the lessee to be compensated because its lease was terminated by the condemnation proceeding, the following rule being adopted by the Court (*id.* at p. 907):

"Generally speaking, where the entire balance of a leasehold is condemned, the lessee is entitled to '. . . the value of the use and occupancy of the leasehold for the remainder of the . . . term . . . less the agreed rent which the tenant would pay for such use and occupancy.'"

■ The foregoing rule contemplates cases of *total* condemnation of the leasehold, but as to *partial* condemnations of a leasehold, there does not exist any specific local judicial or statutory rule which governs the distribution between the interested parties of the amount deposited.[2] For the solution of the case at bar it is necessary, then, to refer to the above-copied clause 14 of the lease contract in force between the parties.

The parties do not question the applicability of clause 14. Appellant maintains, in synthesis, that the scope of clause 14 of the contract is to grant a right to the tenant to *share* in the compensation for the condemnation and not as it was decided by the trial judge in acknowledging the tenant's right to the

---

[2] The Law of Eminent Domain acknowledges in general terms the right of every person in occupation of any property object of the condemnation, having or claiming an interest in the same or in the *damages* for the taking thereof, to appear, plead, and defend his right, each in respect to his own dominion or interest in the property he may have or claim (32 L.P.R.A. § 2906) and it empowers the court to make such orders in respect to encumbrances and other charges, if any, burdening the property, as shall be just and equitable. (32 L.P.R.A. § 2907.)

*totality* of the compensation without taking into consideration the loss of the property right sustained by the landlord-appellant.

Through clause 14, the parties agreed that in case of enforced expropriation, for the public purposes set forth therein, there would not be any reduction of the rent stipulated " . . . and any sums recovered for loss sustained by tenant shall belong to tenant."

The trial court held that the condemnation of 352.62 square meters ". . . did not represent any financial loss whatsoever" for the landlord "during the term of the contract." That is so, according to the order appealed from, due to the fact that according to clause 14 the landlord would continue collecting the same rent, without reduction, from the tenant. But, for the latter, the trial court held, the condemnation meant a loss since the parking area and its facilities would be reduced. It concluded then that that was a loss of the ones contemplated in the contract determining that "the only person entitled to receive the sum [$17,634.80] is the tenant."[3]

■ We do not agree. Clause 14 of the contract concerning the tenant's obligation to continue paying the rent stipulated in its totality actually collects in a contractual manner the majority doctrine which prevails in the United States to the effect that the partial taking of leased property, in the absence of a contractual or statutory provision which provides otherwise, does not affect the tenant's obligation to pay the rent stipulated. 49 Am. Jur.2d § 589; 3 A.L.R.2d 286, 328–332 (Annotation, *Elements and measure of lessee's compensation for taking or damaging leasehold in eminent domain*) ; 48 Va. L. Rev. 477, 479–482, 493–496, Note, 43 Iowa L. Rev. 279–287 (1958) ; 2 Nichols, § 5.23[3].

Thus the parties decided beforehand by contract the possibility of controversies concerning the reduction of the rent

---

[3] The $17,634.80 represent the amount deposited to cover the just value of the parcel condemned.

in case of partial condemnation, question which we left open in *People* v. *McCormick, Etc; Floor Cov. Co., Int., supra* (at p. 920, footnote 25).

The controversy, then, does not center on the right of the tenant to a reduction of the rent, but on its alleged right to the totality of the value of the condemned parcel based on clause 14 which, after establishing that the rent would not be reduced in the case of partial condemnation, immediately after provides:

". . . and any sums recovered for loss sustained by tenant shall belong to tenant."

The lease contract covered an area of six thousand odd square meters for an original term of twenty years and an annual rent of $3,600. It also provided that at the option of the lessee, subject to certain conditions, the term could be extended to fifteen (15) additional years for a new rent mutually agreed upon by the parties. As to improvements and alterations it was agreed that they required the lessor's previous approval and that the buildings or improvements belonged to the lessor, without the lessee being entitled to indemnity, except that the lessee was under the obligation of removing them at its expense if there was a request by the lessor to those effects upon the termination of the lease.

The lessee maintains, in effect, that the condemnation clause does not read as it says, but that where it reads "any sums recovered for loss sustained by tenant" they meant to say:

". . . and any sum recovered in the condemnation shall belong to tenant."

That would be tantamount to maintaining that according to the condemnation clause, as it is read by lessee, the lessor transferred to lessee not only the use and enjoyment, but the dominion title of the condemned parcel, valued by the court at $17,634.80, for the price of $2,675 payable in 12 years and

8 months at the annual rate of approximately $210, which represents the proportional annual rent over the condemned parcel which the lessee is under the obligation to pay to the lessor for the term of the contract which remained.[4]

This anomalous result would undermine the sense of the contract agreed upon by the parties assigning to it a radically different effect from the one revealed by the lease contract in its different clauses considering one with the others. We are concerned here with a lease contract, not with a contract of sale. The phrase "any sums recovered for loss sustained by tenant" does not support the alleged right of the latter to the totality of the just value of the condemned parcel. This interpretation would be by itself inconsistent with other clauses of the contract which grant the lessor the ownership of every improvement or building which the lessee builds therein.

■ Said interpretation is unacceptable since it broadens the obligations of the contract expanding them to cover rights and obligations of a different nature and scope than those to which the parties consented, impairing thus the principle stated in a clear and express manner in our Civil Code to the effect that however general the terms of the contract may be, there should not be understood as included therein things and cases different from those which were the object of the contract. Section 1235, 31 L.P.R.A. § 3473.

■ In the instant case the dominion title over a parcel of 352.62 square meters, part of a parcel of greater area held in lease by appellee was condemned. Strictly speaking, in our jurisdiction ordinarily the lessee is not acknowledged the right to recover for losses for items such as moving expenses, costs for reinstallation of equipment, loss of business, good-

---

[4] $$\frac{\$3,600 \text{ (contract rent)}}{6,054.35 \text{ s/m (leased area)}} = \$.5947 \text{ by s/m;}$$

352.62 s/m (condemned area) x $.5947 = $210.

will, etc. Insofar as the government is concerned the compensation which it should pay for the dominion title generally is not affected by the fact that the property is subject to a lease contract. *People* v. *McCormick, Etc.; Floor Cov. Co., Int., supra.* Insofar as the lessee is concerned his right to indemnity for such items for losses should be the object of a contract between the lessor and the lessee and in the case under our consideration it was not. If the parties had considered that such items for damages were recoverable for the lessee against the condemnation funds, they could have easily stated so specifically. It is worth noting that the lessee has not claimed them here. That is not surprising since the condemnation involved three small pieces of land with a total area of 352.62 square meters without any building or installed equipment. The damages for loss of business and goodwill would appear, at the most, insignificant, if not too remote and unlikely.

The amount fixed by the trial court—represented by the total value of the condemned parcel—as loss sustained by the lessee is not supported by the condemnation clause nor by any other acceptable basis.

We have already held that clause 14 did not have the scope nor does it include the lessee's right to compensation for special items for moving, costs of installation of equipment, loss of business, goodwill, etc. Rather the clause parts from the premise that appellee, by virtue of its leasing relations— term of the contract, improvements, payment of land tax, etc. —has an indeterminate financial interest over the total amount of the value of the condemned parcel. In the absence of an express provision in the contract, it is necessary that we fix a financial value to the aforementioned interest.

■ In other words, our mission is to determine the sum to which the lessee is entitled for the deprivation of the use and enjoyment of a part, although small, of the leased area during the rest of the term of its lease on the basis that the

lease contract is still in force without any reduction in the rent.

In referring to the problem of apportionment of the funds of the condemnation between the lessor and lessee, it is stated in 1 Orgel, *Valuation Under Eminent Domain* 521, § 121, 2d ed.:

"This question has given the courts more trouble than any other problem of apportionment. Most frequently it takes the form of the question whether or not the lessee is still bound to pay the reserved rent during the unexpired term of the lease, even after the premises have been condemned. If his obligation continues, the principle of indemnity requires that he be paid a portion of the award sufficient to compensate him for his continuing liability. If it ceases, he need not be compensated for this item, but he may still have a claim for the difference between the rental value of the premises and the rent reserved."

In the instant case the lessee agreed to pay the same rent without any reduction, but it did not waive the right to share in the funds of the condemnation. The point is which is the measure of the indemnity.

■ Aside from other damages—moving expenses, improvements, reinstallation of equipment, etc.—not included or claimed herein, the lessee may sustain a loss as a result of the partial condemnation for two reasons.

The first one, because the value of the lease may decrease as a result of the fact that the contract rent be less than the economic rent which may be obtained in its sublease. *Korf* v. *Fleming*, 239 Iowa 501, 32 N.W.2d 85, 33 A.L.R.2d 270 (1948); Laurence Sando, *Appraisal of Leasehold Interests*, Third Annual Institute of Eminent Domain, Southwestern Legal Center (1961); Schmutz, *Condemnation Appraisal Handbook* 151–157 (1949); Orgel, *op. cit.*, § 124, p. 530.

In *People* v. *McCormick, Etc.; Floor Cov. Co., Int., supra* at p. 907, we referred to the question of the amount to which the lessee was entitled because its lease was terminated by

the condemnation proceeding. There we stated that "Generally speaking, where the entire balance of a leasehold is condemned, the lessee is entitled to . . . the value of the use and occupancy of the leasehold for the remainder of the . . . term . . . less the agreed rent which the tenant would pay for such use and occupancy."

Although in *McCormick* we were dealing with the condemnation which "frustrated" the principal purpose of the lease contract like a "total" condemnation, the measure of damages, according to the rule followed in the majority of the jurisdictions in the United States, is the same as when partial condemnations of the property object of the contract are involved. *Committee on Condemnation and Condemnation Procedure*, Am. Bar Asso., 1970 Report; Polasky, *The Condemnation of Leasehold Interests*, 48 Va. L. Rev. 477, 493–494 (1962); Note, *Condemnation and the Lease*, 43 Iowa L. Rev. 279–287; Schmutz, *op. cit.*, United States v. *31.07 Acres of Land, etc.*, 189 F.Supp. 845, 848 (1960); 1 Orgel, *op. cit.*, § 126, pp. 536–541; Annotation, 3 A.L.R.2d 286, 296. This is the rule which acknowledges the lessee's right to receive the "market value" of the lease as compensation for the premature, total or partial loss of his lease.

Orgel, in his cited work, at p. 530, points out that the relative paucity of cases denying compensation to a tenant under a lease of measurable duration suggests that the courts are ready to assume an excess of rental value over rent reserved.[5] In *Korf* v. *Fleming, supra*, it is stated that ordinarily the market value is the criterion which should be followed in the valuation of the leasehold interest, although it recognizes that frequently the latter does not afford a reasonable basis to apportion the sum adjudged in the condemnation. A similar statement is made in Jahr, *Eminent Domain Valuation and Procedure* 194, § 130 (1957 ed.):

---

[5] See *Korf* v. *Fleming, supra*; 43 Iowa L. Rev. 279, 284, 285.

"The holding by the courts that leasehold interests are to be valued according to their 'market value' probably poses a problem which is just as complicated as the original problem. How are those interests to be valued by 'market value'? Certainly there are very few sales of leases exactly in point. It is not like valuing a piece of real property where you may find sales of comparable properties in the vicinity. Each leasehold is *sui generis*. Nevertheless, the courts have said that market value is the measure of compensation to the lessee. The market value must be determined by qualified experts in the sale of leases."

■ The above-mentioned valuation rule does not help appellee. The latter does not invoke it either. Furthermore the record lacks any rational basis whatsoever which may be used to support a conclusion to the effect that the total value of the dominion title of the condemned land coincides with the market value of its rental interest, or that it is justified to leave unaltered the sum awarded by the trial court. In order to share in the funds, the burden of proof to establish its loss fell upon appellee. *People* v. *McCormick, Etc.; Floor Cov. Co., Int., supra* at 906, footnote 9; Jahr, *op. cit.*, p. 194; *United States* v. *31.07 Acres of Land, etc., supra; Korf* v. *Fleming, supra.* In view of the absence of relevant facts in the record, we are not ready to assume that the economic rent exceeds the contract rent and much less in condition to fix an amount to indemnify appellee for that item.

The second item for damages which may be sustained by lessee in these cases is an amount equivalent to the actual value of the rent payable in the future. That is to say, in view of the fact that the lessee will be bound in the future to continue paying the full rent agreed upon, but he will not be enjoying the whole property which he agreed to lease, he is entitled to a compensation for those future losses. *Dept. of Public Works & Buildings* v. *Metro. Life Ins. Co.*, 192 N.E.2d 607, 613 (Ill. App. 1963) ; *Sacramento & San Joaquín Drainage Dist.* v. *Truslow*, 270 P.2d 928, 933 (Cal. Dist. Ct. App. 1954) ; *City of Pasadena* v. *Porter*, 257 P. 526, 528 (Cal.

1927) ; Schmutz, *op. cit.*, p. 153. In the record there is indeed a basis to grant this second item.

We have already seen that the condemned land keeps the same proportion to the total land which $210 keeps to $3,600 (the annual rent agreed upon). Reckoning from a duration of 12 years 8 months of future lease and assuming that the lessee would have invested the value in which the use of the property leased has decreased at the annual rate of 6%, let us proceed to apply the formula described by Schmutz. From the table which appears in Schmutz' work at p. 292, we see that the factor corresponding to a 12-year period is 8.384, 8.853 being the factor corresponding to 13 years. Interpolating we obtain the factor 8.697, corresponding to a period of 12 years 8 months. The product of 8.697 and the aforementioned amount of $210 is $1,826.37, amount which justly corresponds to lessee. Naturally, the remaining belongs to the lessor, owner of the land, appellant herein.

Consequently, our opinion is that from the amount of $17,634.80 fixed by the trial court as just value of the condemned parcel, the amount of $1,826.37 belongs to appellee and the remaining $15,808.43 belongs to appellant. As to the item of interest deposited by the Government—amounting to $990.16—it will be apportioned in the same proportion as the amounts which correspond to the parties as indicated, that is to say, $102.98 for appellee and $887.18 for appellant.

By virtue thereof, the judgment appealed from will be modified in accordance with the foregoing.