THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Plaintiff-Appellee, *v.* BLACKBERRY UNION CEMETERY *et al.,* Defendants-Appellants— (LAVERNE RAYMOND *et al.,* Defendants-Appellees.).

(No. 73-254;

Second District (1st Division)—September 30, 1975.

Robert F. Casey and Dale C. Flanders, both of Geneva, for appellants.

William J. Scott, Attorney General, of Springfield, T. J. Reuland, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora (Roy E. Frazier, Jr., Thomas J. Banbury, and Noel C. Davis, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The Department of Public Works and Buildings of the State of Illinois in September of 1970, filed an action to condemn various parcels, including the 4.115 acres here involved, for highway purposes. The jury rendered directed verdicts (1) fixing the compensation for said tract at $37,000 and (2) allocating $3,335 of that sum to the value of the leasehold of the Pines Gravel Company therein. Only the Gravel Company appeals, contending that the court erroneously sustained objections to three different evidentiary items submitted by it. We disagree and affirm.

On August 1, 1968, LaVerne Raymond, doing business as Raymond Sand and Gravel Company, leased from Walter Mueller and others some 18 acres of vacant land in Sugar Grove Township in Kane County. No rental was provided for other than a "royalty" of 25¢ per yard of 3,000 pounds of sand and gravel removed therefrom. The lease was to run until August 1, 1971, with the privilege of renewal for successive three-year periods at a royalty to be adjusted upwards or decreased, at yearly intervals, "on the basis of the prevailing prices of gravel then existing in relation to the present prices of sand and gravel." In January of 1969, this lease was assigned to Walter Mueller and Frank Zwart, doing business as The Pines Gravel Company and they operated the gravel pit until Walter Mueller's death in March of 1970.

Frank Zwart then bought Walter Mueller's one-half interest in the gravel company from his estate for $37,500, including said lease, plus all machinery and equipment and accounts receivable. According to Zwart, Mrs. Marianne Fausto, Walter Mueller's daughter, during the negotiations on behalf of her mother, said that she "attributed" $25,000 to the value of said lease.

On June 1, 1970, the above lease was cancelled and a new lease was executed covering some 17½ acres of said premises (some had been sold off to one Peter Molitor). Again no rental was provided for but the "royalty" was increased from 25¢ to 28¢ per yard of sand and gravel removed. This lease was from various persons who are codefendants here and the lessee was Frank Zwart, doing business as The Pines Gravel

Company, not incorporated. The term was 12 years, after which the "royalty" was subject to revision semiannually. A corporation, the stock owned by Zwart and his wife, of the same name was organized and Zwart assigned said lease to it.

Three months later, on September 5, 1970, the Department filed the instant action to condemn various parcels, including the 4.115 acres owned by the defendant-lessors and leased to the Gravel Company, for an extension of Illinois Route 47.

In March of 1971, some six months later, the Gravel Company assigned the lease on the remaining 14 acres to D & H Trucking, Inc., and Kane County Concrete, Inc., for $54,500 and at the same time sold all of its machinery and equipment, including trucks, crushers, washing plants, etc., to the same parties for $75,500. It was conceded that the sales were related and that the sale had to include both.

In January of 1973, the condemnation suit went to trial and the jury, on a directed verdict, fixed the compensation for the 4.115 tract at $37,000. This was the value put upon it by the Department's expert appraisal witness, and no one challenges this figure. The dispute at the trial and here concerns only the allocation of $3,350 of this sum to the value of the leasehold interest of the Gravel Company in that tract. Only the Gravel Company appeals, contending that three different evidentiary items were improperly kept out of evidence by the trial court.

Before considering these items, we shall first consider the Department's formula, which was as follows—that the value of the leasehold, under the facts of this case, consists of the advantage in terms of rent payments enjoyed by the lessee as measured by the difference in what lessee pays as rent and what the fair rental value of the property is. Thus, if lessee pays less rent than the fair rental value of the property, lessee then enjoys an advantage over others for which compensation must be made upon the loss of the leasehold interest (see Illinois Pattern Jury Instructions, Civil, Instruction 300.59 expressing this formula and indicating that it is to be used to determine value in cases where there is a taking of all property, including the fee and leasehold interests).

The Department's appraisal witness testified that he arrived at a figure of $3,350 substantially as follows. He calculated that this value, expressed in terms of a "royalty" fee, was $.20 per ton of sand and gravel mined in the area. He testified that he arrived at this figure based upon information he discovered through investigation, experience, and knowledge of the operations of the market place in the area. He then converted the actual rent paid by the Gravel Company ($.28 per 3000 pounds of sand and gravel mined) into a comparable figure and concluded that the actual rent paid amounted to $.1866 per ton of sand and

gravel removed from the area. The difference, or the rent advantage enjoyed by the Gravel Company amounted to $.0134 per ton of sand and gravel removed.

However, since no sand or gravel had actually been removed from the 4.115-acre parcel, the witness proceeded to estimate the amount of sand and gravel that might be mined from the property. Based on information available from test borings, he calculated that there were 365,707 tons of mineable sand and gravel in the tract. He then determined the rental advantage enjoyed by Pines Gravel to be $4,900.47 (a figure he arrived at by multiplying the total mineable tonnage of sand and gravel by the rental advantage per ton of sand and gravel mined). Finally, he arrived at the $3,335 figure by discounting against the $4,900.47 figure in order to arrive at a present value of Pines Gravel's rental advantage (the lease was for 144 months and 141 months remained on it).

■ 1   The proper test to be applied where there is a partial condemnation of a lessee's leasehold interest is set out in *Department of Public Works & Buildings v. Metropolitan Life Insurance Co.* (1963), 42 Ill.App.2d 378, 389, 192 N.E.2d 607. The court there stated that the lessee's award should equal the fair market value of lessee's leasehold which is taken by condemnation plus the amount required to compensate lessee for his continuing obligation to pay rent. In the instant case, there was no continuing obligation to pay rent, as there is in most cases, where there has been only a partial condemnation. Therefore, there was no need to compensate lessee for a continuing obligation to pay rent. Where no such obligation exists, the partial condemnation of a leasehold interest may be treated as a total condemnation and the proper award to lessee for his loss is the fair rental value of the leasehold interest minus the actual rent paid. The difference, or the advantage lessee enjoys by paying less rent than others would pay, is the amount lessee should be awarded for his loss (Illinois Pattern Jury Instructions, Civil, Instruction 300.59; see also *Corrigan v. City of Chicago* (1893), 144 Ill. 537, 33 N.E. 746; *Yellow Cab Co. v. Howard* (1927), 243 Ill.App. 263; *Commercial Delivery Service, Inc. v. Medema* (1955), 7 Ill.App.2d 419, 424, 129 N.E.2d 579).

The Gravel Company does not actually challenge this formula but contends that it should have been permitted to put before the jury three other evidentiary items as to value.

The *first* of these three rejected evidentiary items was the proferred testimony of Frank Zwart to the effect that Marianne Fausto, one of the present codefendants, who had participated in negotiations in March of 1970, on behalf of her mother for the sale to Frank Zwart of her deceased father's one-half partnership interest in the Gravel Company (the assets of which included the earlier 18-acre lease with a 25¢ royalty, plus all

machinery and equipment and accounts receivable), for $37,500, had said that she "attributed" $25,000 of that sum to the value of the lease.

■■ In the first place, the lease to which Mrs. Fausto is supposed to have "attributed" a value of $25,000 was an earlier (1968) lease which covered a somewhat larger acreage (18 vs. 17½) and, more importantly, provided for a smaller royalty (25¢ vs. 28¢) per yard. In the second place, Mrs. Fausto testified that she did not recall making any such statement, that no figure whatsoever was assigned to the lease and there was no amount fixed in the contract on the lease, only on the going business ($37,500), which included the lease, all machinery and equipment and accounts receivable. And in the third place, at that time, she herself had no pecuniary interest in the lease. Obviously, the proferred testimony had no probative value and the objections to it were properly sustained.

■■ The *second* of these three rejected evidentiary items was the proferred testimony of Frank Zwart as to his own opinion as to the fair cash market value of the leasehold interest as of September 5, 1970, the day the petition to condemn was filed. His conclusion was that the fair cash market value of the entire (17½ acres) leasehold on that date was $16,000, but what he actually testified to as to the basis of his said opinion was as follows:

"We paid Mueller $37,500, and my $37.500 is $75,000. * * * Divide 18 by 4 and you come up with $16,000."

He also said that his opinion reflected his profits then and thereafter. Further he was in no way qualified as an expert. And his computations, above quoted, relate to an earlier lease with a 25¢ royalty, not the later one with 28¢ royalty. Obviously, his proferred testimony on this item had no probative value whatsoever and objections thereto were properly sustained.

■■ The *third* and last of these three rejected evidentiary items was the proferred testimony of Frank Zwart to the effect that, when, almost six months later, his Gravel Company, on March 21, 1971, sold out to D & N Trucking, Inc., and Kane County Concrete, Inc., it received $54,500 for the 1971 lease covering the other (uncondemned) 14 acres, plus $75,000 for all machinery and equipment, including loaders, crushers, washers, pit trucks, buildings, etc. He conceded that it was a combined sale of the Gravel Company as a going business and that neither would have been sold separately.

The actual rental value of the leasehold was not even considered. Mr. Zwart was asked: "[T]o be specific, did you base your price upon the fair rental value of the leasehold as to the fair rental value agreed upon in this particular lease we are dealing with?", and he answered "No." The buyers wanted to buy "the business, the machinery and the pit." The

purchasers obviously sought a nearby source of material, a reduction in competition, future profits and other benefits having no probative value in a condemnation proceeding involving an unexpired lease. We conclude that this proferred testimony had no probative value and that objections to it were properly sustained.

All in all, we conclude and hold that the trial court's actions and the result reached were proper in all respects and therefore affirm the judgment.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.